701 S.E.2d 757

**SOUTH CAROLINA DEPARTMENT OF SOCIAL SERVICES, Respondent,**

v.

**M.R.C.L., R.L., and G.L., Defendants,**

**of whom M.R.C.L. is Appellant.**

**In the Interest of One Minor Child.**

**No. 4744.**

Court of Appeals of South Carolina.

Submitted Sept. 1, 2010.

Decided Sept. 22, 2010.

Rehearing Denied Nov. 23, 2010.

330

Phillip S. Ferderigos and Jeremy E. Bowers, both of Charleston, for Appellant.

Paul C. White, of Moncks Corner, for Respondent.

Tammie Lynn Hoffman, of North Charleston, for Guardian ad Litem.

KONDUROS, J.

M.R.C.L. (Mother) appeals the termination of her parental rights to her minor child (Child) pursuant to sections 20–7–1572(3) and (4) of the South Carolina Code (2007) (current version at 63–7–2570(3) & (4) (2010)) (willful failure to visit and willful failure to support, respectively). We reverse and remand to the family court for a permanency planning hearing.[1]

## FACTS

On May 25, 2007, after Mother and R.L. (Father) tested positive for cocaine, Child was removed from their home.[2] Child was one year old at the time of removal. Child was placed in a pre-adoptive foster home with two of her sisters.

Following a merits hearing on October 22, 2007, the family court ordered Mother and Father to complete a treatment plan including mental health assessments, parent evaluations, alcohol and drug assessments, and other recommendations. In addition, the family court ordered them to provide Child with safe and appropriate housing,[3] report their legal income, pay child support, and complete "an extensive parenting course." Mother and Father failed to complete the alcohol and drug assessments, parenting classes, and home safety

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

2. The South Carolina Department of Social Services (DSS) first became involved with Mother and Father in 1991. Mother and Father had seven children. In April 2004, before Child's birth, DSS removed the other children from Mother and Father's home. Mother's and Father's parental rights to the other six children were terminated October 7, 2008, in a separate action.

3. The record does not make clear what improvements to the home the family court ordered or why. One month before Child's removal, the home was inspected and found to be safe. The sole reason for Child's removal was her parents' positive cocaine tests, which occurred on May 16, 2007. However, Mother tested negative for drugs on May 3, 2007; May 29, 2007; November 1, 2007; April 21, 2008; and September 27, 2008.

improvements necessary for DSS to return Child to them.[4] Although Father paid some child support from his Social Security disability benefits, Mother, a homemaker, paid nothing.

In April 2008, DSS initiated termination of parental rights (TPR) proceedings. The complaint for TPR alleged as statutory grounds meriting TPR (1) willful failure to visit, (2) willful failure to support, (3) failure to remedy the condition leading to removal, (4) a diagnosable condition that was unlikely to change and that prevented Mother from providing Child with "minimally acceptable care," and (5) harm or neglect of Child from which the home cannot likely be made safe within twelve months. Moreover, the complaint indicated Child had remained in foster care continuously since her removal from Mother. Both parents testified at the November 3, 2008 TPR hearing. Mother stated they lived in a two-bedroom trailer home. According to Father, their income consisted of his Social Security disability benefits of approximately $689 per month and occasional income he earned by doing odd jobs and lawn care. In addition to everyday expenses, Father had recently purchased new cell phones for himself and Mother at a cost of $100 each. Their monthly expenses included approximately $50 per month for food and healthcare for their ten dogs and $30 per month for cellular telephone service.[5] An unspecified amount of Father's Social Security disability benefits went to support Child.

When Mother last worked in April 2004, she held three jobs. Mother suffered from diabetes during her pregnancy with Child. A degenerative disk disease prevented her from doing jobs that included lifting heavy objects. At the time of the TPR hearing, Mother had applied unsuccessfully for approximately thirty jobs. She was on probation for assault on a child, and she admitted driving while her driver's license was

---

4. However, Dr. Lois Masouris testified she provided Mother and Father with three sessions of "Triple P" parenting training but could not complete the course without Child's attendance. Dr. Masouris wrote to DSS requesting Child's attendance at ten future sessions, but DSS never responded.

5. Mother and Father do not have a landline telephone.

suspended. However, Mother denied doing drugs, including smoking crack cocaine.

Mother testified she visited Child in foster care fourteen times. However, a court order prevented her from visiting Child for two or three months during the seventeen months between Child's removal and the TPR hearing. According to Kathleen Spell, the DSS case manager, Mother and Father took snacks, drinks, toys, lotion for Child's skin issue, and antibiotics to Child. Mother also testified they provided toys, food, clothes, diapers, wipes, medication, and lotion. In anticipation of Child returning home, Mother redecorated the smaller bedroom for Child by painting, installing curtains and carpet, and rearranging furniture.

Spell testified she attempted to evaluate improvements to the home on several occasions, but Mother and Father prevented her from entering. The last time she visited, they permitted her to enter the house, but she left before completing her evaluation because Father cursed at her, yelled, and slammed doors.

Wendy May of South Carolina Vocational Rehabilitation (SCVR) testified she saw Mother on June 12, 2007. May offered Mother guidance counseling, GED preparation classes, and job readiness training. SCVR offered Mother van transportation to its GED classes and job readiness training sessions, but she declined. Mother attended a few classes but did not complete any of the programs within the first year. On the date of the TPR hearing, Mother had been re-enrolled for approximately one month.

Maria Royle, Child's guardian ad litem (GAL), testified Child appeared reluctant to spend time with Mother and Father, and they had to "bribe" her with treats. According to Royle, Child bonded with her foster family and called her foster mother "Mommy." Royle believed it was in Child's best interest to terminate Mother's and Father's parental rights so Child and her siblings could be adopted by their foster family. She expressed concern that despite being "in the system" since 1991, Mother and Father had failed to rehabilitate themselves from their history of drug use and arrests.

The family court terminated Mother's and Father's parental rights pursuant to sections 20–7–1572(3) and (4) of the South Carolina Code (2007) (willful failure to visit and willful failure to support, respectively). The family court also found TPR was in Child's best interests. Mother now appeals.

## STANDARD OF REVIEW

"A ground for [TPR] must be proved by clear and convincing evidence." *Richland County Dep't of Soc. Servs. v. Earles,* 330 S.C. 24, 32, 496 S.E.2d 864, 868 (1998). "In reviewing a termination of parental rights, the appellate court has the authority to review the record and make its own findings of whether clear and convincing evidence supports the termination." *Id.*

## LAW/ANALYSIS

### I. Willful Failure to Visit

Mother argues the family court erred in finding DSS proved by clear and convincing evidence she willfully failed to visit Child. We agree.

One ground for TPR is proven when:

The child has lived outside the home of either parent for a period of six months, and during that time the parent has wilfully failed to visit the child. The court may attach little or no weight to incidental visitations, but it must be shown that the parent was not prevented from visiting by the party having custody or by court order. The distance of the child's placement from the parent's home must be taken into consideration when determining the ability to visit.

S.C.Code Ann. § 63–7–2570(3) (2010). "Willful conduct is conduct that evinces a settled purpose to forego parental duties ... because it manifests a conscious indifference to the rights of the child to receive support and consortium from the parent." *Charleston County Dep't of Soc. Servs. v. Jackson,* 368 S.C. 87, 97, 627 S.E.2d 765, 771 (Ct.App.2006) (internal quotation marks omitted). Whether the failure to visit is willful "is a question of intent to be determined from the facts and circumstances of each individual case." *S.C. Dep't of Soc.*

*Servs. v. Headden,* 354 S.C. 602, 610, 582 S.E.2d 419, 423 (2003).

South Carolina courts have not quantified how many visits a parent may make while legally failing to visit. Rather, the family court and this court are required to examine "the facts and circumstances" of this particular case to determine whether Mother's failure was willful. *See id.* In the instant case, the record is more deficient than informative. It reflects that, during the approximately fifteen months Mother was permitted to visit Child, she made fourteen visits. The visits were described as "sporadic," and the GAL testified three of them occurred during the month preceding the TPR hearing. However, no evidence indicated how many visits were scheduled, how many scheduled visits Mother missed, or how much time elapsed between visits. According to the GAL, during the last month, Mother's visitation required the GAL to be present, but the record contained no evidence as to whether additional limitations or requirements applied to her other visits. The GAL testified she had observed only Mother's last three visits with Child. Although the GAL believed Mother and Child did not bond, no evidence indicated how long the visits lasted or what activities, if any, took place besides the presentation of toys and snacks. The GAL testified that she personally visited Child approximately two times per month, but no evidence indicated whether Mother was invited to these visits. Furthermore, the record contained no evidence of the distance between Mother's home and either the foster home or the visitation location. Because Mother visited Child nearly once per month on average, and because the record fails to provide details of the purported failure to visit or clear indications of willfulness, the family court erred in finding DSS proved by clear and convincing evidence Mother willfully failed to visit Child.

## II. Willful Failure to Support

Mother asserts the family court erred in finding she willfully failed to support Child. We agree.

Another ground for TPR is met when:

The child has lived outside the home of either parent for a period of six months, and during that time the parent has

wilfully failed to support the child. Failure to support means that the parent has failed to make a material contribution to the child's care. A material contribution consists of either financial contributions according to the parent's means or contributions of food, clothing, shelter, or other necessities for the care of the child according to the parent's means. The court may consider all relevant circumstances in determining whether or not the parent has wilfully failed to support the child, including requests for support by the custodian and the ability of the parent to provide support.

S.C.Code Ann. § 63–7–2570(4) (2010). "Willful conduct is conduct that evinces a settled purpose to forego parental duties ... because it manifests a conscious indifference to the rights of the child to receive support and consortium from the parent." *Jackson*, 368 S.C. at 97, 627 S.E.2d at 771. Whether the failure to support is willful "is a question of intent to be determined in each case from all the facts and circumstances." *S.C. Dep't of Soc. Servs. v. Seegars*, 367 S.C. 623, 630, 627 S.E.2d 718, 721 (2006).

The record clearly reflects that Mother had no income of her own. The statute requires a "material contribution" of either money or necessities "according to the parent's means." § 63–7–2570(4). The evidence adduced at the TPR hearing indicates Mother's means were extremely limited but she provided some necessities during her visits with Child. Because of her inability to find employment, Mother either had no means whatsoever or was entirely dependent upon Father for means to support Child. The family's only regular income came from Father's Social Security disability benefits. Although Child received some amount of money from that source, the record does not indicate how much money Child received or when she began receiving it. The payments appear to have started at the urging of the GAL, but aside from the entry of an order of support against Mother, no evidence indicates the GAL made additional requests for money from Mother. More importantly, the record contains no evidence the family court examined the relevant circumstances to determine what would have constituted a material contribution according to Mother's means.

We find unpersuasive Mother's argument that she was a housewife by choice. Mother applied to dozens of jobs and

diligently followed up on her applications until she received responses. The record reflects she sought but failed to take full advantage of vocational rehabilitation services from SCVR, but the SCVR representative testified that SCVR was not a job placement agency. Although SCVR offered services to assist individuals in becoming more marketable, it did not provide employment. Consequently, even Mother's full, successful completion of SCVR's programs would not have guaranteed her income.

Mother contends that, lack of income notwithstanding, she made material contributions to Child. Child's DSS case manager testified Mother and Father provided child with snacks, drinks, toys, lotion for Child's skin issue, and antibiotics. Mother testified they provided toys, food, clothes, diapers, wipes, medication, and lotion. Lastly, Mother testified that she had prepared the smaller bedroom in their home for Child by painting, installing curtains and carpet, and rearranging furniture. Considering her extremely limited means, Mother's efforts do not appear to "evince[ ] a settled purpose to forego parental duties." *See Jackson*, 368 S.C. at 97, 627 S.E.2d at 771. Therefore, the family court erred in finding DSS proved by clear and convincing evidence that Mother willfully failed to support Child.

## III. Best Interests

Finally, Mother asserts the family court erred in conducting a best-interests analysis despite DSS's failure to prove any statutory ground by clear and convincing evidence. Because we reverse the family court's grant of TPR on the statutory grounds, we do not reach this issue. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (ruling an appellate court need not review remaining issues when its determination of a prior issue is dispositive of the appeal).

## CONCLUSION

In accordance with the foregoing, we reverse the family court's termination of Mother's parental rights and remand for a permanency planning hearing. *See* S.C.Code Ann. § 63–7–2580(B) (2010) ("If the court finds that no ground for termi-

nation exists and the child is in the custody of [DSS], the order denying termination must specify a new permanent plan for the child or order a hearing on a new permanent plan.").

**REVERSED AND REMANDED.**

CURETON, A.J., concurs.

WILLIAMS, J., dissenting.

I respectfully dissent and would affirm the grant of TPR in this case, finding the family court correctly found clear and convincing evidence that Mother willfully failed to support Child. *See* S.C.Code Ann. § 63–7–2570(4) (2010) (stating a ground for TPR exists when "[t]he child has lived outside the home of either parent for a period of six months, and during that time the parent has wilfully failed to support the child" either financially or through material contributions to the child's care); *see also Richland County Dep't of Soc. Servs. v. Earles,* 330 S.C. 24, 32, 496 S.E.2d 864, 868 (1998) ("A ground for [TPR] must be proved by clear and convincing evidence."). Our courts have held that "[c]onduct of the parent which evinces a settled purpose to forego parental duties may fairly be characterized as 'willful' because it manifests a conscious indifference to the rights of the child to receive support and consortium from the parent." *Hooper v. Rockwell,* 334 S.C. 281, 297, 513 S.E.2d 358, 367 (1999).

I would find there is sufficient evidence in this record to support the finding that Mother's failure to support Child was willful. Mother admits that she paid no child support, despite her proven ability to earn an income based on her testimony that prior to April 2004 she held three jobs simultaneously. In her brief, Mother argues she intentionally remained at home by agreement with her husband, choosing to remain dependent upon Father's Social Security disability income for all her needs rather than returning to work to help support this child or any of her other six children. Her position is that is it is unfair to consider that she prefers to remain in the home as a housewife instead of working to support Child. No evidence indicates Mother's presence was required at home to care for Father. In fact, Father testified that despite his disability, he performed lawn care and odd jobs for additional money. With all seven children removed from the home,

Mother was free to seek gainful employment. However, evidence that she pursued employment is scant and contradictory. She testified that she submitted thirty job applications, but on cross-examination she admitted this was different than the testimony given one month earlier in another TPR action involving one of her other children. Mother does not argue on appeal that she is disabled and unable to work. In fact, Mother testified that during the month prior to the merits hearing, she redecorated Child's room by repainting, installing carpet, and moving furniture. She testified she did take a day off from redecorating because her back hurt. However, she indicated she was still able to use that time to grocery shop and to submit job applications.

Evidence is plentiful that she eschewed not only employment but also any professional assistance that would have improved her ability to find work. Although Mother initially sought assistance from SCVR, she failed for over fifteen months to take advantage of any of the several programs they offered that could have improved her workplace skills and her employability. Not surprisingly, she even refused offers of transportation to get her to these classes. She attended so infrequently that she was dropped from their rolls. Accordingly, it is clear the inability of Mother to find employment was because Mother had neither the desire nor the intention to provide financial support for Child. Most importantly, Mother testified that she and Father agreed she would not work outside the home even though she had a responsibility to support Child.

Finally, I believe any contributions Mother made to Child's welfare were not material. Testimony indicated Mother provided a few items for Child during her initial visits. The GAL testified that Mother provided nothing during her last three visits, which occurred during the month immediately preceding the TPR hearing. Consequently, Mother's efforts to provide for Child were negligible.

Moreover, the record demonstrates the best interest of Child would be served by granting TPR.

Accordingly, I would find there is clear and convincing evidence of her failure to support Child. Mother's choices indicate a clear and settled purpose to forego her parental

responsibilities to support Child. Therefore, I would affirm the family court's decision to terminate Mother's parental rights.