712 S.E.2d 452

SOUTH CAROLINA DEPARTMENT OF
SOCIAL SERVICES, Petitioner,

v.

M.R.C.L., R.L., and G.L., Defendants,

of whom M.R.C.L., is Respondent,

and

G.L., by and through Guardian ad Litem,
Maria Royle, is Petitioner.

No. 27007.

Supreme Court of South Carolina.

Heard June 7, 2011.
Decided July 18, 2011.
Rehearing Denied Aug. 5, 2011.

388

Paul C. White, of Moncks Corner, for Petitioner.

Phillip S. Ferderigos and Jeremy E. Bowers, both of Barnwell Whaley Patterson & Helms, of Charleston, for Respondent.

Virginia Cravens Ravenel, of Columbia, for Guardian Ad Litem.

PER CURIAM.

We granted certiorari to review the Court of Appeals' decision in *South Carolina Dept. of Social Services v. M.R.C.L.*, 390 S.C. 329, 701 S.E.2d 757 (Ct.App.2010). We reverse.

## FACTS

The Department of Social Services (DSS) initiated termination of parental rights (TPR) proceedings against M.R.C.L. (mother) and R.L. (father). Child was removed from mother and father's home in May 2007 due to allegations of physical neglect, after both parents tested positive for crack cocaine. Child, who was one year old at the time, was placed in a pre-adoptive foster home with two of her siblings.[1] Mother and father have a history with DSS dating back to 1991, and their drug abuse is a recurring issue.

After a merits hearing, the family court ordered mother and father to complete a treatment plan, including a drug and

---

1. Mother and father have a total of seven children. Excluding the child that is the subject of this action, TPR has been granted as to five of the other children, and one child has been emancipated.

alcohol assessment and a parental assessment, and to maintain safe and appropriate housing. Mother and father did not complete the treatment plan.

Mother was offered job counseling services through South Carolina Vocational Rehabilitation (SCVR), including diagnosis and treatment, GED prep classes, and job readiness training. Although mother attended a few days of classes, she did not successfully complete the program. Mother claimed she had transportation issues, despite having been offered transportation to the job training center and the GED center.

The family court also ordered mother and father to pay child support. Father paid some child support, using disability benefits, but mother paid none. Father and mother both considered mother to be a "housewife," and both testified father provided for the family financially. Father testified his income consisted of disability benefits of approximately $689 per month and occasional income he earned by performing odd jobs and lawn care. Because mother did not earn any income, father paid all of the bills, and the family purchased groceries using mother's food stamps.

At the time child was removed from the home, mother and father owned five dogs. At the time of the TPR hearing, mother and father owned ten dogs, which mother estimated cost fifty dollars per month to feed. Mother and father also purchased cell phones for approximately two hundred dollars. Over the course of the time child was in foster care, these expenditures totaled over one thousand dollars.

Mother last worked in 2004 when she held three jobs in different fast food establishments. Mother suffered from diabetes during her pregnancy with child and later developed a degenerative disc disease in her shoulders and lower back. According to mother, the disease left her unable to lift heavy objects as required by many jobs in the fast food industry. At the time of the TPR hearing mother claimed to have unsuccessfully applied for approximately thirty jobs. On cross-examination, mother admitted this testimony differed from testimony she had given one month earlier in a different TPR action. Mother testified she applied for jobs not only in the fast food industry, but also different types of jobs "to try and better [herself]." Mother claimed to have applied for a job

answering phones but believed she was not offered the position because of her lack of computer skills.

After child was first placed in foster care, mother provided medications and lotion for child's eczema. Mother also testified she provided child with food, drinks, toys, diapers, and wipes. The DSS case manager acknowledged mother provided the lotion when child was first placed into foster care, but testified mother provided child only snacks, drinks, and toys during her last two or three visits.

The GAL testified that, in her opinion, it was in child's best interest to terminate mother and father's parental rights and allow the foster parents to adopt child. The GAL stated child was reluctant to spend time with mother and father and that they had to "bribe" child with snacks and toys. The GAL also testified child had bonded with her foster parents and called her foster mother "mommy." The GAL stated her biggest concern with returning child to mother and father was that they had failed to rehabilitate themselves from their drug use.

The family court terminated mother and father's parental rights, generally finding (1) mother and father willfully failed to visit the child; (2) mother and father willfully failed to support the child; and (3) TPR was in the best interest of the child.

Mother appealed the grant of TPR, and the Court of Appeals reversed, holding DSS failed to prove by clear and convincing evidence that mother willfully failed to support or visit the child. Because the Court of Appeals found DSS failed to prove any statutory ground for TPR, it did not reach the issue whether TPR was in the best interest of the child. We granted both DSS and the GAL's petitions for a writ of certiorari.

## ISSUE

Did the Court of Appeals err in reversing the family court's order terminating mother's parental rights?

## STANDARD OF REVIEW

Grounds for termination of parental rights must be proven by clear and convincing evidence. *Doe v. Roe,* 386 S.C.

624, 630, 690 S.E.2d 573, 577 (2010). Upon review, this Court may make its own conclusion from the record as to whether clear and convincing evidence supports the termination. *Id.* This Court, however, is not required to ignore the fact that the family court, who saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony. *Id.*

## *LAW/ANALYSIS*

DSS argues the Court of Appeals erred in reversing the family court's TPR order. We agree.

The family court may order TPR upon a finding of one or more of the following grounds, and that termination is in the best interest of the child:

. . . .

(3) The child has lived outside the home of either parent for a period of six months, and during that time the parent has willfully failed to visit the child. The court may attach little or no weight to incidental visitations, but it must be shown that the parent was not prevented from visiting by the party having custody or by court order. The distance of the child's placement from the parent's home must be taken into consideration when determining the ability to visit.

(4) The child has lived outside the home of either parent for a period of six months, and during that time the parent has wilfully failed to support the child. Failure to support means that the parent has failed to make a material contribution to the child's care. A material contribution consists of either financial contributions according to the parent's means or contributions of food, clothing, shelter, or other necessities for the care of the child according to the parent's means. The court may consider all relevant circumstances in determining whether or not the parent has willfully failed to support the child, including requests for support by the custodian and the ability of the parent to provide support. S.C.Code Ann. § 63-7-2570 (2010).[2]

Whether a parent's failure to visit or support a child is "willful" within the meaning of the statute is a question of

---

2. Formerly S.C.Code Ann. § 20-7-1572.

intent to be determined from all the facts and circumstances in each case, and the trial judge is given wide discretion in making this determination. *S.C. Dep't of Soc. Servs. v. Broome*, 307 S.C. 48, 52, 413 S.E.2d 835, 838 (1992). "While the trial judge is given wide discretion in making this determination, the element of willfulness must be established by clear and convincing evidence." *S.C. Dep't of Soc. Servs. v. Smith*, 343 S.C. 129, 137, 538 S.E.2d 285, 289 (2000). "Conduct of a parent which evinces a settled purpose to forego parental duties may fairly be characterized as 'willful' because it manifests a conscious indifference to the rights of the child to receive support and consortium from the parent." *S.C. Dep't of Soc. Servs. v. Seegars*, 367 S.C. 623, 630, 627 S.E.2d 718, 721 (2006).

### A. Willful Failure to Visit

▉ DSS does not challenge the Court of Appeals' holding that DSS did not prove by clear and convincing evidence that mother willfully failed to visit child. In finding DSS failed to show mother willfully failed to visit the child, the Court of Appeals noted there was no evidence of how many visits were scheduled, how many visits mother missed, how long the visits lasted, what activities took place during the visits, how much time elapsed between each visit, or whether mother was invited to participate in the GAL's visits. The court further noted the record contained no evidence of the distance between the foster home and mother's home, which the TPR statute requires to be a consideration in determining the parent's ability to visit.

The GAL's sole argument regarding visitation is that the Court of Appeals erred in considering whether mother was invited to participate in the GAL's visits. The GAL does not otherwise challenge the Court of Appeals' holding that DSS failed to show by clear and convincing evidence that mother willfully failed to visit child.

Disregarding the Court of Appeals' consideration whether mother was invited to participate in the GAL's visits, its holding was based on numerous other reasons why DSS did not show mother willfully failed to visit child. Because these rulings have not been challenged, they are the law of the case.

*See Ulmer v. Ulmer*, 369 S.C. 486, 632 S.E.2d 858 (2006) (as a general rule, an unchallenged ruling, right or wrong, is the law of the case). We therefore decline to address whether the Court of Appeals erred in holding DSS did not meet its burden of proving mother willfully failed to visit child. The only issues before this Court are whether mother willfully failed to support child and, if so, whether TPR was in the child's best interest.

### B.  *Willful Failure to Support*

■  DSS argues the Court of Appeals erred in holding DSS failed to show by clear and convincing evidence that mother willfully failed to support the child. We agree.

The Court of Appeals found that, considering mother's "extremely limited means," her efforts did not appear to evince a settled purpose to forego parental duties. The Court of Appeals also noted mother failed to take advantage of the vocational rehabilitation services offered by SCVR, but found the programs would not have guaranteed her income, even had she completed them.

We find the Court of Appeals erred in reversing the family court's finding that mother willfully failed to support the child. Specifically, considering all the facts and circumstances of this case, DSS showed by clear and convincing evidence that mother willfully failed to support child. The TPR statute requires the parent make a material contribution, either financial or consisting of other necessities "according to the parent's means." Although mother had no independent source of income, occasionally providing child with food, drinks, medicine, diapers, wipes, and toys would not be considered a material contribution.

The most significant issue for our consideration, therefore, is whether mother's failure to support child was willful. We find the Court of Appeals erred in holding DSS failed to show by clear and convincing evidence that mother willfully failed to support child. Specifically, we disagree with the Court of Appeals' holding that mother's failure to support child was not willful because her actions did not evince a settled purpose to forego parental duties. *Seegars, supra.* We disagree with the Court of Appeals' conclusion that mother's failure to complete

the SCVR program does not serve as evidence that her failure to support child was willful. The Court of Appeals correctly notes mother's completion of the program would not have guaranteed mother an income, but would have only served to make her a more desirable candidate for employment. However, mother's failure to increase her chances of finding employment by taking advantage of the SCVR program or undertaking an effort to earn her GED manifests her indifference to child and her intention to forego parental responsibilities. Over the course of fifteen months mother had to complete the program, she only attended a few classes. Mother's only excuse for not completing the program was that she had transportation issues, but she could have been provided with transportation.

Further, there is evidence mother had the means to provide child with some financial support, but chose to spend that money on other items. Namely, mother continued to pay an estimated fifty dollars per month to care for her dogs during the seventeen-month span child was in foster care. This monthly expense constituted a large sum of money mother could have instead provided child.

In sum, we believe mother's failure to pay court-ordered child support or give a reasonable excuse for her failure to pay manifests a conscious indifference to the rights of child to receive support. *Seegars, supra.*

### C. Best Interest of the Child

DSS argues TPR is in child's best interest. We agree.

■ The GAL testified that, in her opinion, it was in child's best interest to terminate mother and father's parental rights. Further, mother has an extensive seventeen year history with DSS stemming from her recurring drug abuse. Judging from mother's past history with drug and alcohol abuse, her apparent indifference to obtaining gainful employment, and her lack of bond with child, we find the family court properly found TPR was in child's best interest.

## CONCLUSION

The Court of Appeals erred in holding DSS failed to show by clear and convincing evidence that mother willfully failed to

support child.  We further hold the family court properly found TPR was in child's best interest.  Accordingly, the decision of the Court of Appeals is

**REVERSED.**

TOAL, C.J., PLEICONES, BEATTY, KITTREDGE and HEARN, JJ., concur.