<hr/>

742 S.E.2d 382

**Chris and Frankie BROOM, Respondents,**

v.

**JENNIFER J., Derrick H., and South Carolina Department of Social Services, Defendants,**

**Of Whom Jennifer J. is the, Appellant.**

Appellate Case No. 2012–206546.

No. 27251.

Supreme Court of South Carolina.

Heard April 2, 2013.

Decided May 8, 2013.

Jennifer A. Jeffrey, of Jeffrey Law Firm, LLC, and Thomas L. Bruce, of S.C. Legal Services, both of Greenville, for Appellant.

Philip J. Temple, of Temple and Mann, of Greenville, for Respondents.

Deborah Murdock, of Murdock Law Firm, LLC., of Mauldin, for Amicus Curiae, Greenville County Department of Social Services.

Justice HEARN.

This would be a straightforward appeal in a termination of parental rights action but for the fact that the mother whose rights were terminated was erroneously denied counsel. However, because we hold she was not prejudiced by the error, the grounds for termination were established by clear and convincing evidence, and termination is in the child's best interest, we affirm.

## FACTUAL/PROCEDURAL BACKGROUND

In March of 2007, Mother gave birth to Child.[1]  Five months later, on August 7, 2007, the Pickens County Department of Social Services received a report of neglect from a sheriff's deputy.  Three families—six adults and eleven children—resided in Child's home, the trash was overflowing, moldy dishes and food were strewn about, Mother and Father admitted to using cocaine, and Child had a visibly flat head which Mother explained resulted from her being left in a car seat for extended periods.  Mother also admitted that Child had received her immunizations from the health department, but had not seen a doctor since birth.  The same day, DSS filed a complaint for removal of Child and her older half-sister (Sister) due to abuse and neglect.[2]  The following day, Child tested positive for cocaine.

On August 17, 2007, Child and Sister were removed from the home and placed in emergency protective custody.  A week later, Child was placed with the Brooms for foster care.[3]  Following a hearing, the family court found probable cause for removal of Child based on the positive drug test and Mother's

---

1.  Child's father (Father) voluntarily relinquished his parental rights during this action.

2.  Child and Sister are both Mother's biological children, but have different fathers.

3.  Sister, who is not at issue in this case, was also placed with the Brooms for foster care.  In February 2008, Sister was removed from the Brooms' home and placed with her paternal grandparents.  Then in May 2009, the family court ordered that Sister could be returned to Mother immediately upon the completion of a favorable homestudy and approval of the guardian *ad litem*.  However, Sister was not returned to Mother until almost a year later, in March of 2010.

admission of substance abuse. The court also gave legal custody of Child to DSS and directed the appointment of counsel for Mother. At some point thereafter an attorney was appointed to represent Mother.

Following a merits hearing, the family court issued an order finding physical abuse and neglect and approving treatment plans for the parents. Mother's treatment plan required her to obtain a safe and stable home, undergo psychological and substance abuse assessments, complete parenting classes, obtain and maintain employment for six consecutive months, and undergo random drug testing. Additionally, the court approved a visitation plan which provided that Mother was to visit Child at least twice per month.

In the ensuing months, Mother failed several drug tests, with her last failed test occurring in January of 2008. At a permanency planning hearing that month, she admitted that if she was tested at that time, she would be positive for cocaine. Presumably, she quit using drugs at some point thereafter as she passed all subsequent drug tests. At the permanency planning hearing, she also agreed Child should remain in DSS custody because her home was still not safe. In the resulting initial permanency planning order, the family court declined to return Child to Mother and Father because Mother had tested positive for cocaine and they both admitted to continued use.

In April of 2008, Mother was arrested on burglary and grand larceny charges and spent two months in jail. She was released and completed a pretrial intervention program. One year later, in April of 2009, a second permanency planning hearing was held. Mother and the other parties agreed that Child should not be returned to her at that time because Child faced an unreasonable risk of harm from her not having completed the treatment plan. The court ordered that Child was to remain in DSS custody.

On May 15, 2009, the Brooms filed this action for termination of parental rights and adoption, listing Mother, Father, and DSS as defendants. The complaint sought termination of Mother's parental rights on the grounds of Mother failing to visit Child in excess of six months, Mother failing drug rehabilitation and suffering from the diagnosable condition of drug addiction, Mother surrendering possession of Child with-

out making adequate arrangements for her care, and Child having been in foster care for fifteen of the most recent twenty-two months.

The Brooms filed a motion for temporary relief which, in part, sought the appointment of counsel for Mother and Father. In an order entered June 30, 2009, the Honorable Kinard Johnson found they were not entitled to court-appointed counsel because the action was not brought by DSS. In a later hearing before the Honorable Alex Kinlaw, Mother objected to proceeding without counsel, and while the court noted that objection in its subsequent order, it did not make any findings or rulings relevant thereto.

In October of 2009, Mother married. In November 2010, she had a third child, fathered by her husband. Mother ceased working outside the home and devoted her time to caring for her third child and Sister.

A final hearing was scheduled for August 11, 2010, but Mother retained South Carolina Legal Services to represent her one week prior to the hearing. Her new counsel moved for a continuance of the hearing in order to prepare, and the motion was granted. While several additional continuances were granted in the case, none were requested by Mother.

On November 1, 2011, a final hearing, at which Mother was represented by counsel, was held on the Brooms' TPR action.[4] Christy Harris, the DSS caseworker assigned to Child, testified about the visitation between Mother and Child, stating Child often cried during the visitation and did not identify Mother as her parent. She also presented a visitation log which showed that Mother typically visited Child for one hour once per month. Mother only exercised her minimum, twice per month visitation in two of the fifty months Child had been in foster care. She did not visit Child for eight months from December 21, 2007, to August 30, 2008. She also failed to visit Child in eleven other months.[5] In short, Mother exercised

---

4. The adoption matter was held in abeyance until after the termination of parental rights and any appeal were resolved.

5. Mother failed to visit Child in the months of July, September, and November 2008; January, June, August, and October 2009; February, April, and July 2010; and September 2011.

only thirty-four of the minimum one hundred visits she was permitted to make. She explained her failure to visit more often as arising from difficulties scheduling visits with DSS and the Brooms and the cancellation of visits by the Brooms. Harris acknowledged that her log did not reflect when visitation was requested but was unable to be scheduled. She also acknowledged there were times when Mother requested visitation but she or the Brooms were not available.

Harris testified that for two and a half years after the April 2, 2009 permanency planning hearing, DSS did not request another hearing despite the family court stating Mother would be ready for the return of Child by October of 2009. While DSS policy apparently—and remarkably—does not require the automatic scheduling of a hearing when a parent completes a treatment plan, Harris asked a DSS attorney to set a hearing for the case but it was never done. She also testified Mother did not complete her treatment plan in a timely manner because she did not complete it within one year of Child's removal. She noted that the foster care review board, which meets every six months, recommended adoption at its previous five or six meetings. However, she testified that DSS supported the reunification of Mother and Child as being in Child's best interest.

Mrs. Broom testified concerning her family and Child's place in it. Both Mr. and Mrs. Broom hold advanced degrees in their respective fields and are gainfully employed. At the time, in addition to having four-year-old Child, they had three sons, ages seventeen, fifteen, and ten and another foster child, age three, in their home. Their sons are all accomplished as students, athletes, and musicians.

When Child arrived in the Brooms' home she suffered from serious developmental difficulties. At the age of five months, when placed stomach-down on a blanket she was unable to roll-over, move, or even turn her head to breathe. She was also unable to track movement with her eyes or sit up on her own. Since that time, the Broom family engaged in numerous treatments and exercises to address Child's misshapen head and developmental difficulties. The most striking example is that Child had to wear a corrective helmet for six months in order to reshape her head. She is now developmentally

advanced for her age and is actively involved in family activities, school, and church.

Over Mother's objection that neither she nor her report had been disclosed prior to the hearing, bonding expert Meredith Loftis testified about the bond between Child and the Brooms. She expressed her opinion that Child should be placed with the Brooms and highlighted the permanency needed in a child's life and the feeling of permanency Child had developed in the Broom family. She testified that Child views the Brooms as her family and if she was removed from them, she would be at risk of suffering from attachment disorder which may cause emotional, behavioral, and substance abuse problems later in life.

Mother testified an attorney was appointed to represent her in the DSS case. However, she last heard from him in 2009, and was unsure why he failed to continue to represent her. He did state to her at one point that he could not represent her in the Brooms' TPR action. It seems he was still representing her at the initial permanency planning hearing on April 2, 2009, because he is listed as appearing as her counsel in the ensuing order.

Mother further testified that her understanding from the April 2009 permanency planning hearing was that she had completed the treatment plan but would have to return to court to have Child returned. She thought DSS would schedule the necessary hearing. She acknowledges that at no time, even after retaining South Carolina Legal Services, did she file a motion for Child's return.

The guardian *ad litem* for Child testified that termination of parental rights and adoption by the Brooms was in Child's best interest. In support, he testified that Child is more bonded with the Brooms and that to remove her from their home would be detrimental. Additionally, a volunteer guardian *ad litem* testified that termination of parental rights and adoption by the Brooms was in Child's best interest due to the bond she developed with them in the important early years of her life.

The family court entered a final order terminating Mother's parental rights. The order first found that the termination of parental rights and adoption by the Brooms was in Child's

best interest. It relied on the fact that Child was removed from Mother at age five months and had lived with the Brooms for over four years thereafter. It also highlighted the efforts by the Brooms to alleviate Child's problems, the improvement Child made in their home, Child's beliefs that the Brooms are her family, the bonding between Child and the Brooms, and the excellent home environment the Brooms provide Child. The order also acknowledged Mother's love for Child and the strides Mother had made in improving her life and ability to serve as a parent. In conclusion, the order summarized TPR and adoption as being in Child's best interest because:

> [Child] has essentially spent the entire 4½ years of her life with the Brooms. She is fully integrated into the Broom family, and has very little bonding or attachment to [Mother].... The evidence is compelling that taking this child out of her current home would be a highly traumatic event for [her], presenting a significant risk of major long-term consequences including attachment and other possible disorders.

Turning to the statutory grounds for TPR, the court found that the Brooms failed to present clear and convincing evidence of a diagnosable condition, drug addiction, or abandonment, and thus two of the alleged statutory grounds were not satisfied. However, the court found both the ground of a child remaining in foster care for fifteen of the last twenty-two months and the failure to visit ground were satisfied. Regarding the failure to visit, the court found "an inconsistent pattern of visitation," and that Mother failed to visit Child "for a period exceeding six consecutive months from December 21, 2007 until August, 2008." As to the fifteen months in foster care ground, the court found it was established by the undisputed evidence that Child had lived with the Brooms in foster care for the previous four years. The court also considered *Charleston County Department of Social Services v. Marccuci*, 396 S.C. 218, 721 S.E.2d 768 (2011), which held that the fifteen months ground should not be strictly applied where much of the delay is attributable to others. The court acknowledged that Mother experienced significant procedural delays attributable to others in that her counsel "unilaterally stopped representing her in the DSS action," and the case was continued four times delaying its resolution by one year—from

October 27, 2010, to November 1, 2011. However, it found those delays distinguishable from the delays in *Marccuci* because Child had already been in foster care for fifteen months before any of those delays occurred. It also found *Marccuci* distinguishable because there the father did not abuse or neglect the child, whereas here, Mother admitted she abused and neglected Child.

Accordingly, the family court terminated Mother's parental rights and placed custody of the Child with the Brooms. Mother filed a motion for reconsideration based on the failure to appoint her counsel and that the court erred, in light of *Marccuci*, in strictly adhering to the fifteen of twenty-two months ground where there were procedural delays she did not cause. The family court denied the motion and this appeal followed.

## ISSUES PRESENTED

I.  Did the family court err in terminating Mother's parental rights where she was denied the assistance of appointed counsel?

II. Did the family court err in finding a statutory ground for termination existed?

Did the family court err in permitting an expert to testify where the expert and her report were not disclosed prior to the hearing?

## LAW/ANALYSIS

### I. DENIAL OF COUNSEL

Mother asserts the family court erroneously terminated her parental rights because she was denied counsel at critical stages of the proceedings. She contends that had counsel been appointed, her attorney would have moved for the return of Child. She asserts therefore that because Child would not have been in foster care for as long, Child would have been returned to her. While we find the denial of counsel was erroneous, we conclude the error did not prejudice Mother or render the termination of her parental rights unfair, and thus does not warrant reversal.

In the criminal context, the United States Supreme Court has held the Due Process Clause of the United States Constitution provides criminal defendants with an absolute right to counsel where their liberty is at stake. *See Argersinger v. Hamlin*, 407 U.S. 25, 37–38, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972). In light of the serious consequences of a criminal conviction, the Court concluded that "in our adversary system of criminal justice, any person haled into court, who is too poor to hire a lawyer, cannot be assured a fair trial unless counsel is provided for him." *Gideon v. Wainwright*, 372 U.S. 335, 344, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). However, the procedural protections required by the Due Process Clause in the criminal setting do not necessarily apply to the termination of parental rights.

In *Lassiter v. Department of Social Services of Durham County*, 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981), the United States Supreme Court held there is no absolute right to counsel for an indigent parent in a TPR proceeding. In reaching that conclusion, the Court viewed its prior case law as establishing a presumption that an absolute right to appointed counsel only exists where a defendant's physical liberty is at stake. *Id.* at 25, 101 S.Ct. 2153. Specifically, the Court noted there is no per se right to counsel for parole revocation proceedings or for a criminal prosecution in which imprisonment is not a possible punishment. *See id.* at 26, 101 S.Ct. 2153 (citing *Scott v. Illinois*, 440 U.S. 367, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979); *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972)). Applying the three-part test set forth in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), for determining what procedural protections due process requires, the Court concluded a parent subject to a termination of parental rights proceeding has an extremely important right at stake, the state's interest is often aligned with the parent in seeking a correct decision, and the complexity of a TPR proceeding and the likely incapacity of the parent create a risk of erroneous determinations. *Lassiter*, 452 U.S. at 31, 101 S.Ct. 2153. The Court thus held that while there is no absolute right of indigent parents in TPR proceedings to have appointed counsel, there may be specific cases where the parent's interest is particularly strong, the state's interest is weak, and there is such a high risk of error,

that due process would require the appointment of counsel. *Id.* Accordingly, the Court adopted the standard set forth in *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), as governing whether due process requires the appointment of counsel for a particular indigent parent in a TPR proceeding. *Lassiter,* 452 U.S. at 31–32, 101 S.Ct. 2153. Under that standard, if considering the totality of the circumstances "fundamental fairness" would be lacking absent appointed counsel, the state must provide counsel. *Gagnon,* 411 U.S. at 790, 93 S.Ct. 1756.

This Court dealt with the issue of appointed counsel for indigent TPR defendants in *South Carolina Department of Social Services v. Vanderhorst,* 287 S.C. 554, 340 S.E.2d 149 (1986), where a mother's parental rights were terminated without representation by counsel. The Court described *Lassiter* as requiring "a reviewing court [to balance] private interests, the government's interests and the risk that procedures used will lead to erroneous decisions." *Id.* at 559, 340 S.E.2d at 152. Based on the use of expert psychological evaluations, the mother's erratic behavior indicating mental instability, and the damage to her position caused by her pro se representation, the Court held that due process required that the mother be appointed counsel. *Id.* at 559–60, 340 S.E.2d at 152–53. The Court also declined to "join the majority of states which hold that due process requires the appointment of counsel for indigents in all termination of parental rights case," but did express "caution that under our interpretation of *Lassiter[,]* cases in which appointment of counsel is not required should be the exception." *Id.* at 560, 340 S.E.2d at 153.

Thereafter, the South Carolina General Assembly enacted Section 20–7–1570 of the South Carolina Code (Supp.1985) which provided: "If the parent is not represented by counsel, the judge shall make a determination on a case by case basis whether counsel is required. If the parent is indigent and counsel is not appointed, the judge shall enter on the record the reasons counsel was not required." *Vanderhorst,* 287 S.C. at 559 n. 3, 340 S.E.2d at 152 n. 3. As the Court recognized, that statute was merely "legislative recognition of the *Lassiter* requirement." *Id.* However, the legislature subsequently replaced that statute with a provision that: "Parents, guardians,

or other persons subject to a termination of parental rights action are entitled to legal counsel. Those persons unable to afford legal representation must be appointed counsel by the family court, unless the defendant is in default." S.C.Code § 63–7–2560(A) (2010).

Thus, while under the United States Constitution and the South Carolina Constitution there is no absolute right to counsel for an indigent parent subject to a TPR proceeding, S.C.Code § 63–7–2560(A) now provides an absolute statutory right to counsel for indigent parents subject to TPR proceedings. The statutory language could not be clearer in providing that an indigent parent *must* be appointed counsel. Furthermore, the absolute nature of the requirement is especially manifest in light of the fact that the current statute replaced a statute requiring counsel only on a case-by-case basis.

Here, Mother was denied counsel because the TPR action was a private action rather than one filed by DSS. However, Section 63–7–2560(A) makes no distinction based on the party seeking the termination of parental rights. Rather, it provides that any indigent parent subject to "a termination of parental rights proceeding" must be provided counsel. S.C.Code § 63–7–2560(A). Thus, the denial of counsel was erroneous.[6]

In considering whether the denial of counsel requires reversal, we are mindful that TPR actions are markedly different from criminal cases, the area in which the denial of counsel commonly arises. While the remedy of reversing and remanding for the appointment of counsel and a new trial where a defendant is denied counsel is appropriate in a criminal case, that is not necessarily true in the TPR context. In a sense, the facts of a criminal trial are frozen in time. However, a family court considering the termination of parental rights must make a decision as to what is best for the child going forward. Thus, the merits of a TPR action can change during the pendency of the action, whereas the merits of a criminal trial do not ordinarily change during its pendency. Additionally, while criminal cases are focused on the rights of

---

6. We note that Mother's constitutional right to counsel under the case-by-case approach set forth in *Lassiter* and *Vanderhorst* was not at issue here.

the defendant, a TPR action must consider both the right of the parent to raise her child and the child's best interest.

In short, unlike a criminal case, it may be impossible to truly remedy the denial of counsel in a TPR action. The best interest of a child changes with the passage of time, and thus there is no way to turn back the hands of time and put a parent in the position she would have been in had she not been denied counsel. Furthermore, simply ordering the child to be returned to the parent may be neither a just nor proper remedy because the best interest of the child is paramount and may not be served by that remedy.

For those reasons, we elect to join other courts in holding that where a parent is deprived of counsel for some time prior to the final TPR hearing, but has counsel at the final hearing, the decision will only be reversed where the denial of counsel prejudiced the parent. *See, e.g., Briscoe v. State, Dep't of Human Servs.*, 323 Ark. 4, 912 S.W.2d 425, 427 (1996); *In re People ex rel. S.D. Dep't of Soc. Servs.*, 691 N.W.2d 586, 592 (S.D.2004); *In re Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177, 186–87 (1996); *In re MN*, 78 P.3d 232, 240 (Wyo.2003). Accordingly, where the parent erroneously denied counsel was not prejudiced thereby, the denial of counsel is not reversible error.

Here, while the lack of counsel likely delayed the resolution of the case, we find that it did not affect the outcome. Even had counsel been present, the statutory grounds for termination would have been satisfied and it would have been in Child's best interest for Mother's parental rights to be terminated. Child was placed in foster care on August 24, 2007, and while the exact date is not clear from the record, Mother's appointed attorney did not cease representing her until after April 2, 2009.[7] At that point, Child had already been in foster care for nineteen months, and thus the fifteen months in foster

---

7. While the details are not clear from the record, we are deeply concerned that here an appointed attorney apparently unilaterally terminated his representation of Mother. The Rules of Professional Conduct could not be clearer that "[a] lawyer must comply with applicable law requiring notice to or permission of a tribunal when terminating a representation." Rule 1.16, RPC, Rule 407, SCACR. Furthermore, attorneys have a duty to communicate with their clients. *See* Rule 1.4, RPC, Rule 407, SCACR.

care was already satisfied while she was still represented by counsel.

Also, assuming her counsel abandoned her following the hearing on April 2, 2009, Mother was unrepresented for only sixteen months before she obtained representation from S.C. Legal Services in August of 2010. That sixteen months represents only a small portion of the fifty months Child had been in foster care at the time of the final hearing. It is inescapable that a longer period of delay in the resolution of this case—the nineteen months between the removal of Child in August 2007 and the permanency planning hearing in April 2009—was due to Mother's failure to satisfy her treatment plan. Also, Mother was not even capable of having Child returned for some portion of the sixteen months she was unrepresented as she agreed at the April 2, 2009 permanency planning hearing that she had not yet completed the treatment plan and was not ready to have Child returned to her.

Furthermore, Mother was again represented for fifteen months from August 2010 until the final hearing in November 2011, and she never filed a motion for the return of Child during that time. Additionally, that fifteen month period means that the fifteen of the most recent twenty-two months in foster care ground for TPR was satisfied even excluding the time before she obtained counsel in the TPR action.

Finally, even if the lack of counsel affected the length of time Child remained in foster care, the failure to visit ground for termination was still satisfied. Mother did not argue that the lack of counsel affected her ability to visit Child, nor do we see how it could have. To the contrary, Mother did not provide any explanation beyond her own conduct for the majority of the visits she missed. Therefore, we conclude her denial of counsel was not prejudicial.

## II. STATUTORY GROUNDS FOR TERMINATION

The family court found that two statutory grounds for termination were satisfied: Child having been in foster care for fifteen of the most recent twenty-two months and Mother's failure to visit. Mother contends the family court erred

because those grounds were not satisfied by clear and convincing evidence. We disagree.[8]

The statutory grounds for termination of parental rights must be proven by clear and convincing evidence. *Richberg v. Dawson*, 278 S.C. 356, 357, 296 S.E.2d 338, 339 (1982). On appeal, pursuant to its de novo standard of review, the Court can make its own determination from the record of whether the grounds for termination are supported by clear and convincing evidence. *S.C. Dep't of Soc. Servs. v. Cummings*, 345 S.C. 288, 293, 547 S.E.2d 506, 509 (Ct.App.2001).

### A. Fifteen of the Most Recent Twenty–Two Months in Foster Care

Section 63–7–2570(8) of the South Carolina Code (2010) provides for the termination of parental rights where: "The child has been in foster care under the responsibility of the State for fifteen of the most recent twenty-two months." Mother did not contest the fact that Child continuously remained in foster care for over four years prior to the TPR hearing—from August 24, 2007, until November 1, 2011. Thus, there can be no dispute that simply in terms of time spent in foster care, the ground was satisfied.

The real crux of Mother's argument is that the resolution of the case was extensively delayed for reasons beyond her control and thus the family court erred in strictly adhering to the statutory ground. In support, Mother relies on *Marccuci* and *Loe v. Mother, Father, & Berkeley County Department of Social Services*, 382 S.C. 457, 675 S.E.2d 807 (Ct.App.2009).

In *Marccuci*, a father was arrested and his daughter was removed to DSS custody. His parental rights were later terminated on the ground the child had been in foster care for fifteen of the last twenty-two months, among other grounds. *Marccuci*, 396 S.C. at 224, 721 S.E.2d at 772. On appeal, the

---

8. We note that Mother made a conclusory assertion in her brief that the family court erred in considering Child's best interest prior to determining whether a statutory ground for termination existed. Mother failed to raise that issue to the family court, and thus it is not preserved for our review. *Hoffman v. Powell*, 298 S.C. 338, 340 n. 2, 380 S.E.2d 821, 822 n. 2 (1989) (holding that a claim not raised before the trial court will not be considered for the first time on appeal).

Court held that while the family court was technically correct in finding the ground satisfied, the particular facts of the case caused the ground to not support termination of parental rights. The Court stated, "Where there is 'substantial evidence that much of the delay . . . is attributable to the acts of others,' a parent's rights should not be terminated based solely on the fact that the child has spent greater than fifteen months in foster care." *Id.* at 227, 721 S.E.2d at 773 (quoting *S.C. Dep't of Soc. Servs. v. Cochran,* 356 S.C. 413, 420, 589 S.E.2d 753, 756 (2003) (Pleicones, J., concurring)). The Court went on to conclude that "the delays generated and road blocks erected in the removal action made it impossible for the parties to regain legal custody of [the child] prior to the expiration of the fifteen month period." *Id.*

In *Loe,* the family court terminated a mother's parental rights based on the fifteen months ground, among others, after her children were in foster care for over three years. *Loe,* 382 S.C. at 461–62, 675 S.E.2d at 809–10. DSS admitted that it had caused the delays in reunifying the mother and her children. *Id.* at 469, 675 S.E.2d at 814. On appeal, the court of appeals held that the fifteen months ground was not satisfied because DSS was responsible for the delays. *Id.* at 471, 675 S.E.2d at 814.

*Marccuci* and *Loe* are inapposite here. While the resolution of this case was delayed in part for reasons beyond Mother's control, it was also significantly delayed due to her failure to participate in her treatment plan. Furthermore, Child had already been in foster care for fifteen months before any of the delay not attributable to Mother occurred. Mother, and no one else, through her drug usage and resistance to the treatment plan, caused Child to remain in foster care for fifteen months. The delay that followed does not change the fact that Child spent an excessive period of time during the crucial early years of her life in foster care solely because of Mother's actions. Accordingly, we find the fifteen months in foster care statutory ground for termination satisfied by clear and convincing evidence.

**B. Failure to Visit**

Mother also argues the family court erred in finding she willfully failed to visit Child. She does not dispute that

she failed to visit Child for a period of six months or more in 2008. Rather, she argues the period she failed to visit in 2008 is insufficient to find the ground satisfied and there is no evidence her failure to visit was willful. We disagree.

Section 63–7–2570(3) provides that parental rights may be terminated where "[t]he child has lived outside the home of either parent for a period of six months, and during that time the parent has willfully failed to visit the child." Willfulness is a question of intent to be determined by the facts and circumstances of each case, and the family court judge has wide discretion in making the determination. *S.C. Dep't of Soc. Servs. v. Broome*, 307 S.C. 48, 52, 413 S.E.2d 835, 838 (1992). While the judge has wide discretion, willfulness must be established by clear and convincing evidence. *S.C. Dep't of Soc. Servs. v. Smith*, 343 S.C. 129, 137, 538 S.E.2d 285, 289 (Ct.App.2000). Conduct by a parent that shows a purpose to forego parental duties is willful "because it manifests a conscious indifference to the rights of the child to receive support and consortium from the parent." *S.C. Dep't of Soc. Servs. v. Seegars*, 367 S.C. 623, 630, 627 S.E.2d 718, 721–22 (2006).

Mother contends the facts of her case are analogous to those in *South Carolina Department of Social Services v. M.R.C.L.*, 390 S.C. 329, 701 S.E.2d 757 (Ct.App.2010), *rev'd on other grounds*, 393 S.C. 387, 712 S.E.2d 452 (2011), and the failure to visit finding should be overturned for the same reasons. There, the mother was permitted to visit her child for fifteen months and made fourteen visits, but the visits were characterized as "sporadic," with three of them occurring during the month preceding the TPR hearing. *Id.* at 335, 701 S.E.2d at 760. The court of appeals noted that "South Carolina courts have not quantified how many visits a parent may make while legally failing to visit." *Id.* at 335, 701 S.E.2d at 759. The court reversed the finding of failure to visit because the mother visited the child on average once per month and the record failed to provide sufficient evidence of willfulness. *Id.* at 335, 701 S.E.2d at 760.

This case is materially distinguishable from *M.R.C.L.* There, the evidence only indicated the visitation was sporadic, not that there was a sustained period during which no visitation

occurred. Also, in *M.R.C.L.*, the mother visited on average once per month. Here, Mother failed to visit for eight consecutive months and visited significantly less than once per month—visiting only thirty-four times over the fifty months Child was in foster care.

While there was no evidence the mother's sporadic visitation was willful in *M.R.C.L.*, here there was ample evidence of willfulness. Willfulness does not mean that the parent must have some ill-intent towards the child or a conscious desire not to visit; it only means that the parent must not have visited due to her own decisions, rather than being prevented from doing so by someone else. Mother was questioned at the TPR hearing as to why she failed to visit for eight months in 2008 and her only explanation was that she "wasn't where I needed to be at the time" and that she was incarcerated for a portion of that time. In other words, she does not explain her failure to visit for that period of time as the result of anything but her own choices and actions. Similarly, Mother was not able to provide an explanation for why she failed to visit Child in September 2011, just two months prior to the TPR hearing, other than to say that she was sure she called to schedule a visit. While Mother tried to explain away the lack of visits as resulting from difficulties scheduling visits with DSS and the Brooms, that explanation does not alter the fact that she missed numerous months of visitation when it was clearly possible to schedule at least one visit per month. In conclusion, Mother's willful failure to visit Child for eight months followed by infrequent and sporadic visitation over the following years is sufficient to satisfy this statutory ground.

## III. EXPERT TESTIMONY

Finally, Mother argues the family court erred in permitting the Brooms' bonding expert, Meredith Loftis, to testify. At the hearing, Mother objected to Loftis' testimony on the ground she "was never given any sort of notice of a written report or her testimony." Mother's counsel explained that she had twice requested a list of the Brooms' witnesses, but Loftis had never been disclosed, and the Brooms' counsel admitted he failed to disclose Loftis. The Brooms' called Loftis as a witness, and the court stated it was going to permit her to testify over Mother's objection.

■ We find Mother has abandoned this issue. Issues raised in a brief but not supported by authority may be deemed abandoned and not considered on appeal. *Hunt v. Forestry Comm'n,* 358 S.C. 564, 573, 595 S.E.2d 846, 851 (Ct.App.2004). Her brief cites no authority, other than Family Court Rule 25 which only encourages the prompt exchange of information, in support of her position. She also presents no argument as to how the family court's ruling was an abuse of discretion or prejudiced her. *See Fields v. Reg'l Med. Cent. Orangeburg,* 363 S.C. 19, 25–26, 609 S.E.2d 506, 509 (2005) (the admission or exclusion of evidence is within the trial judge's discretion and to warrant reversal an appellant must show both abuse of discretion and prejudice).

## CONCLUSION

For the reasons set forth, while we hold it was error for Mother to be denied counsel, we find both statutory grounds for TPR were satisfied during the time she had appointed counsel, so we discern no prejudice. Because we find the statutory grounds for termination were satisfied and termination of Mother's parental rights was in Child's best interest, we affirm the family court's termination of Mother's parental rights.

TOAL, C.J., and KITTREDGE, J., concur.

PLEICONES and BEATTY, JJ., concur in result only.