**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
In The Court of Appeals

South Carolina Department of Social Services, Respondent,

v.

Melissa S. and Christopher T., Defendants,

Of whom Christopher T. is the Appellant,

In the interest of minor children under the age of eighteen.

Appellate Case No. 2012-212270

–––––––––––––––

Appeal From Spartanburg County
James F. Fraley, Jr., Family Court Judge

–––––––––––––––

Unpublished Opinion No. 2013-UP-328
Heard June 13, 2013 – Filed July 16, 2013

–––––––––––––––

**AFFIRMED**

–––––––––––––––

William Jeffrey McGurk, of the Law Office of W. Jeffrey McGurk, of Spartanburg, for Appellant.

Deborah Murdock, of Murdock Law Firm, LLC, of Mauldin, for Respondent.

Michael Todd Thigpen, of the Law Office of Michael Todd Thigpen and Brendan M. Delaney, of the Law Office of Delaney & Edwards, LLC; all of Spartanburg, for Guardians ad Litem.

———————

**PER CURIAM:** Christopher T. (Father) appeals the termination of his parental rights (TPR), arguing the family court erred when it found: (1) the minor children had been in foster care for fifteen of the previous twenty-two months; (2) due to the severity or repetition of abuse or neglect, Father's home could not be made safe within twelve months; and (3) Father had not substantially complied with the South Carolina Department of Social Services's (DSS's) treatment plan. We affirm.

**STANDARD OF REVIEW**

"In a TPR case, the best interest of the child is the paramount consideration." *Charleston Cnty. Dep't of Soc. Servs. v. Jackson*, 368 S.C. 87, 95, 627 S.E.2d 765, 770 (Ct. App. 2006). "Before parental rights can be forever terminated, the alleged grounds for the termination must be proven by clear and convincing evidence." *Id.* "On appeal, this court may review the record and make its own determination whether the grounds for termination are supported by clear and convincing evidence." *Id.* "[W]hile retaining the authority to make our own findings of fact, we recognize the superior position of the family court judge in making credibility determinations." *Lewis v. Lewis*, 392 S.C. 381, 392, 709 S.E.2d 650, 655 (2011) (footnote omitted). "This degree of deference is especially true in cases involving the welfare and best interests of a minor child." *Ex parte Morris*, 367 S.C. 56, 62, 624 S.E.2d 649, 652 (2006). "Moreover, consistent with our constitutional authority for *de novo* review, an appellant is not relieved of his burden to demonstrate error in the family court's findings of fact." *Lewis*, 392 S.C. at 392, 709 S.E.2d at 655. "Consequently, the family court's factual findings will be affirmed unless [the] appellant satisfies this court that the preponderance of the evidence is against the finding of the [family] court." *Id.* (internal quotation marks and citation omitted).

**LAW/ANALYSIS**

**I. STATUTORY GROUNDS**

Father argues the family court erred in considering the length of time the children spent in foster care when it decided to terminate Father's parental rights. Although he concedes the children have been in DSS custody for the statutory period, he claims DSS caused the delay in reunification. Specifically, Father argues DSS had no intention of returning the children to him and did not support reunification even after Father completed his treatment plan. Father asserts DSS used the treatment plan as a way to keep the children in DSS custody for the statutory time period. We disagree.[1]

The family court can terminate a parent's rights upon a finding that TPR is in a child's best interest and a finding that the child has been in foster care for fifteen of the last twenty-two months. S.C. Code Ann. § 63-7-2570(8) (2010 & Supp. 2012). "A finding [under subsection (8)] alone is sufficient to support a termination of parental rights." *S.C. Dep't of Soc. Servs. v. Sims*, 359 S.C. 601, 608, 598 S.E.2d 303, 307 (Ct. App. 2004). "[T]he purpose of [this] statutory ground . . . is to ensure children do not languish in foster care when [TPR] would be in their best interests." *Jackson*, 368 S.C. at 101-02, 627 S.E.2d at 773. However, subsection (8) cannot be used as a ground for TPR when a child remains in foster care for the statutory period because of delays by parties other than the parents. *Charleston Cnty. Dep't of Soc. Servs. v. Marccuci*, 396 S.C. 218, 227, 721 S.E.2d 768, 773 (2011) ("Where there is substantial evidence that much of the delay . . . is attributable to the acts of others, a parent's rights should not be terminated based solely on the fact that the child has spent greater than fifteen months in foster care." (internal quotation marks and citation omitted)). In *Marccuci*, "various continuances requested by other parties were largely the reason the child had remained in foster care for fifteen months at the time the TPR action was filed . . . ." *Id.* Thus, the Supreme Court of South Carolina held TPR should not be granted based on subsection (8). *Id.* at 229, 721 S.E.2d at 774.

---

[1] Because we find clear and convincing evidence supports this ground, we decline to address Father's remaining arguments that the family court erred in finding that due to the abuse or neglect, his home could not be made safe within twelve months and that he had substantially complied with his treatment plan. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding an appellate court need not address remaining issues on appeal when disposition of a prior issue is dispositive).

Similarly, in *Loe v. Mother, Father, and Berkeley Cnty. Dep't of Soc. Servs.*, DSS admitted to causing delays that left children in foster care for the statutory period. 382 S.C. 457, 471, 675 S.E.2d 807, 814 (Ct. App. 2009). The *Loe* court held clear and convincing evidence did not support TPR under subsection (8) because "the actions of others raised barriers and caused delays that resulted in [the mother's] children remaining in foster care beyond the statutory time . . . ." *Id.* at 469, 675 S.E.2d at 813. However, *S.C. Dep't of Soc. Servs. v. Sarah W.* clarified that TPR under subsection (8) could be upheld when "the delay in reunification of the family unit is attributable not to mistakes by the government, but to the parent's inability to provide an environment where the child will be nourished and protected." 402 S.C. 324, 336, 741 S.E.2d 739, 746 (2013). In *Sarah W.*, the facts "show[ed] prolonged foster care [was] because of valid court findings [and] that reunification of the family unit was not in the children's best interests." *Id.* at 338, 741 S.E.2d at 747.

Here, the children were removed from Father's home pursuant to a June 11, 2008 court order and have been in foster care since that date. Father did not provide any evidence the delays in reunification were caused by DSS or another party. Although the DSS caseworker and the Guardian ad Litem (the GAL) admitted they supported TPR despite Father's completion of his treatment plan, this testimony does not prove there was an intent to prevent reunification. Instead, the record reflects that the children remained in foster care because the family court found, in four valid orders stemming from separate permanency planning hearings, that Father had not yet complied with his treatment plan. Father's failure to comply with his treatment plan is the reason the children were not returned to him prior to 2011; thus, he cannot argue the actions of DSS caused this delay in reunification. Accordingly, we hold the statutory requirement of section 63-7-2570(8) has been satisfied by clear and convincing evidence. S.C. Code Ann. § 63-7-2570(8) (2010).

## II. BEST INTEREST

Although the best interest of the children was not raised in Father's brief, we have the authority and duty to address it. "[P]rocedural rules are subservient to the court's duty to zealously guard the rights of minors." *Joiner ex rel. Rivas v. Rivas*, 342 S.C. 102, 107, 536 S.E.2d 372, 374 (2000). "'[W]here the rights and best interests of a minor child are concerned, the court may appropriately raise, ex mero motu, issues not raised by the parties.'" *Id.* (quoting *Ex parte Roper,* 254 S.C. 558, 563, 176 S.E.2d 175, 177 (1970)).

"The termination of the legal relationship between natural parents and a child presents one [of] the most difficult issues [our appellate courts are] called upon to decide." *S.C. Dep't of Soc. Servs. v. Cochran*, 364 S.C. 621, 626, 614 S.E.2d 642, 645 (2005). "We exercise great caution in reviewing termination proceedings and will conclude termination is proper only when the evidence clearly and convincingly mandates such a result." *Id.* "In cases involving the termination of parental rights, there exist two, often competing, interests: those of the parents and those of the child." *Id.* "Parents have a fundamental interest in the care, custody, and management of their children." *Id.* "Parental rights warrant vigilant protection under the law and due process mandates a fundamentally fair procedure when the state seeks to terminate the parent-child relationship." *Id.* "However, a child has a fundamental interest in terminating parental rights if the parent-child relationship inhibits establishing secure, stable, and continuous relationships found in a home with proper parental care." *Id.* "In balancing these interests, the best interest of the child is paramount to that of the parent." *Id.* at 626-27, 614 S.E.2d at 645. "Appellate courts must consider the child's perspective, and not the parent's, as the primary concern when determining whether TPR is appropriate." *Sarah W.*, 402 S.C. at 343, 741 S.E.2d at 749-50.

Here, the children were removed from Father's home in 2008 because of a stipulated instance of physical abuse. Between the 2008 removal and the TPR hearing in 2011, the family court held four permanency planning hearings. At each permanency planning hearing, the family court determined the children should not be returned to Father's custody. At the TPR hearing, the GAL and the DSS caseworker concluded TPR was in the best interest of the children. Additionally, the psychologist's report concluded:

> Based on the psychological considerations from this evaluation, it seems with a reasonable degree of certainty, [Father] is likely to have continued difficulties in effectively providing for the emotional and educational needs of his four children independently. If [Father] and [Mother] were to separate and he was awarded custody of any or all of his children, careful DSS/guardian ad litem monitoring would be essential for the safety of the children. Based on the history and psychological findings, even such monitoring could not assure basic safety, based on the present environmental circumstances.

The record also indicates Father has a long history of anger and aggression. He was ordered to complete one set of anger management and parenting classes prior to the 2008 removal. Holly Bailey, who worked for the Playworks agency, which makes home visits to serve special needs children, testified that on one occasion she found the children locked in their room with a crude device and explained to Father and Mother this was a fire hazard. However, Bailey stated the device was not removed for another two or three weeks. Additionally, Father left threatening messages on Bailey's phone, and Playworks ceased to work with Father's family because of noncompliance and a "concern for [their] safety" due to Father's behavior. When the children were removed from the home, Father threw an object at a police car in which two of his children were riding and then chased the police car in his truck until it arrived at a children's shelter.

Even after the completion of his second set of anger management courses, Father continued to display aggression. In May 2011, Father allegedly drove off while Mother was leaning against his truck, causing Mother to fall to the ground. In another instance, Father was arrested for breaking Mother's screen door. Therefore, even after the completion of two anger management courses, Father continued to display characteristics that would put his children at risk if they were placed back in his custody.

As to the children's status during the TPR hearing, the DSS caseworker testified all the children were in pre-adoptive homes and there were plans for the children to visit one another. According to the caseworker, adoption was "definitely in the children's best interest," and the children were "not the same children that came [into] [foster] care." *See id.* at 338, 343-44, 741 S.E.2d at 747, 750 (stating when children were in prolonged foster care because of valid court findings and an adoptive family stepped forward to provide a stable environment, the court would not contribute to further delay). The DSS caseworker explained the children had made marked progress while in foster care, and were now under control, respectful, and well-mannered. By contrast, the DSS caseworker stated when the children entered foster care, they were "totally out of control" to an extent she had not seen before, and their behavior reverted to "more out of control" during supervised visits. The DSS caseworker opined Father could not address the children's special needs and did not believe they would be taken care of if returned to Father. Therefore, allowing the children to be adopted would provide them with the stability and necessary specialized care they would lack in Father's care. *See id.* at 343, 741 S.E.2d at 749-50 ("Appellate courts must consider the child's

perspective, and not the parent's, as the primary concern when determining whether TPR is appropriate."). For these reasons, we find clear and convincing evidence exists to show TPR is in the children's best interest.

## CONCLUSION

The family court's order terminating Father's parental rights is

**AFFIRMED.**

**FEW, C.J., and GEATHERS and LOCKEMY, JJ., concur.**