**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

South Carolina Department of Social Services,
Respondent,

v.

Patricia Montiel, Anjel Alejos, David Ramirez, and Ricardo Ramirez, Defendants,

Of whom Ricardo Ramirez is the Appellant.

In the interest of minors under the age of eighteen.

Appellate Case No. 2016-000501

———————

Appeal From Lexington County
Robert E. Newton, Family Court Judge

———————

Unpublished Opinion No. 2017-UP-132
Submitted February 22, 2017 – Filed March 24, 2017

———————

**AFFIRMED**

———————

Earnest Deon O'Neil, of Columbia, for Appellant.

Scarlet Bell Moore, of Greenville, for Respondent.

Robin Page and Susan Margaret Johnston, both of Columbia, for the Guardians ad Litem.

**PER CURIAM:**  Ricardo Ramirez (Father) appeals the family court's order terminating his parental rights (TPR) to his three minor children (Children).[1]  On appeal, Father argues the family court erred in terminating his parental rights because (1) he had no legal duty to support Children until he was adjudicated by the family court to be Children's legal father and thus did not fail to support them for six months and (2) the fact Child 7 and Child 8 were in foster care for fifteen of the most recent twenty-two months could not be used as a ground for TPR because the South Carolina Department of Social Services (DSS) contributed to the fifteen months Child 7 and Child 8 were in foster care.  We affirm.

On appeal from the family court, this court reviews factual and legal issues de novo.  *Simmons v. Simmons*, 392 S.C. 412, 414, 709 S.E.2d 666, 667 (2011); *Lewis v. Lewis*, 392 S.C. 381, 386, 709 S.E.2d 650, 652 (2011).  Although this court reviews the family court's findings de novo, we are not required to ignore the fact that the family court, which saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony.  *Lewis*, 392 S.C. at 385, 709 S.E.2d at 651-52.  The burden is upon the appellant to convince this court that the family court erred in its findings.  *Id.* at 385, 709 S.E.2d at 652.

The family court may order TPR upon finding one or more of twelve statutory grounds is satisfied and also finding TPR is in the best interest of the child.  S.C. Code Ann. § 63-7-2570 (Supp. 2016).  The grounds for TPR must be proven by clear and convincing evidence.  *Dep't of Soc. Servs. v. Mrs. H*, 346 S.C. 329, 333, 550 S.E.2d 898, 901 (Ct. App. 2001); *S.C. Dep't of Soc. Servs. v. Parker*, 336 S.C. 248, 254, 519 S.E.2d 351, 354 (Ct. App. 1999).  The TPR statute "must be liberally construed in order to ensure prompt judicial procedures for freeing minor children from the custody and control of their parents by terminating the parent-child relationship."  S.C. Code Ann. § 63-7-2620 (2010).

We find clear and convincing evidence shows Father willfully failed to support Children for six months.  *See* S.C. Code Ann. § 63-7-2570(4) (Supp. 2016) (providing a statutory ground for TPR is met when "[t]he child has lived outside the home of either parent for a period of six months, and during that time the parent has wil[l]fully failed to support the child" because the parent failed to make a material contribution of money or necessities); S.C. Code Ann. § 63-1-40(5)

---

[1] "Children" refers to Child 7, Child 8, and Child 9 collectively.

(2010) ("'Parent' means biological parent, adoptive parents, step-parent, or person with legal custody."); *Holcombe v. Hardee*, 304 S.C. 522, 524, 405 S.E.2d 821, 822 (1991) ("A parent is under a legal obligation to support minor children . . . .").

Father's argument that he had no duty to support Children until he was adjudicated by the family court to be the legal father lacks merit under these facts. *See Doe v. Roe*, 386 S.C. 624, 626-27, 632, 635, 690 S.E.2d 573, 575, 577-79 (2010) (determining TPR was appropriate based on a willful failure to support even though father's paternity was not conclusively proven until after the mother sought TPR); *cf. Arscott v. Bacon*, 351 S.C. 44, 54, 567 S.E.2d 898, 903 (Ct. App. 2002) ("Generally, courts rely on parties to be proactive in protecting their own rights."). Father asserts his only claim to fatherhood was his acknowledgement at the January 28, 2015 hearing. However, this was not a situation where Father was unaware of Children's birth and DSS's action seeking TPR. Father's conduct evidenced he had sufficient notice of paternity and acknowledged paternity from Children's birth. Father was listed as the father on Child 7's birth certificate. Father testified that before DSS removed Child 7 and Child 8 from the home on November 22, 2013, he regularly visited and gave Mother money to support them. Additionally, Father was present at the home when Child 7 and Child 8 were removed and involved in DSS's case from the outset. Quinntavea Phillips, a DSS case manager, testified Father held himself out to be the father of Children. She noted DSS permitted Father visitation because DSS assumed Father was Children's father. When Father was asked whether he took a paternity test regarding Children, he replied, "Never. I didn't think it was necessary." Although the March 19, 2014 merits order for Child 7 and Child 8 did not make a specific finding of paternity, Father was a party to the proceeding and did not contest or raise the issue of paternity, despite being represented by counsel. Similarly, although the June 18, 2014 merits order for Child 9 did not make a specific finding of paternity, Father was a party to the proceeding and did not contest or raise the issue of paternity.

At the January 28, 2015 permanency planning hearing, Father acknowledged paternity of Children and declined paternity testing. Father never argued he was not the biological father of Children. Thus, a specific finding of paternity by the family court was not necessary to make Father the biological father of Children; Father became the biological father of Children at the moment of Children's birth. The judicial acknowledgement was a legal recognition that Father was Children's parent since birth. Father's duty to support Children did not commence at the January 28, 2015 permanency planning hearing but commenced the day Children were born. *See Doe*, 386 S.C. at 626-27, 632, 635, 690 S.E.2d at 575, 577-79 (finding a father was on notice that he was the likely biological father once a

paternity test excluded another man and terminating the father's parental rights for a willful failure to support even though paternity was not conclusively established until after the mother sought TPR); *cf. Arscott*, 351 S.C. at 54, 567 S.E.2d at 903 ("[D]oubt as to paternity does not totally absolve a putative father of his responsibility to take steps to protect his rights."). Since Father had sufficient notice he was Children's biological father and failed to provide material support for Children the entire time they were in DSS's custody, we find the family court did not err in concluding Father failed to provide support for Children for a period of six months.

Additionally, we find clear and convincing evidence shows Child 7 and Child 8 were in foster care for fifteen of the most recent twenty-two months. *See* S.C. Code Ann. § 63-7-2570(8) (Supp. 2016) (providing a statutory ground for TPR is met when "[t]he child has been in foster care under the responsibility of the State for fifteen of the most recent twenty-two months"); *S.C. Dep't of Soc. Servs. v. Sims*, 359 S.C. 601, 608, 598 S.E.2d 303, 307 (Ct. App. 2004) ("A finding pursuant to [subsection (8)] alone is sufficient to support [TPR]."); *but see Charleston Cty. Dep't of Soc. Servs. v. Jackson*, 368 S.C. 87, 102 n.8, 627 S.E.2d 765, 773 n.8 (Ct. App. 2006) (noting there may be circumstances "where this statutory ground would not support [TPR] despite the passage of a fifteen month stay in foster care").

Father relies on *Charleston County Department of Social Services v. Marccuci*, 396 S.C. 218, 721 S.E.2d 768 (2011), to support his position that this statutory ground is inapplicable in his case. We disagree and find *Marccuci* distinguishable. In *Marccuci*, DSS delayed bringing the initial merits removal hearing for approximately eighteen months, making "it impossible for the parties to regain legal custody of [child] prior to the expiration of the fifteen month period." *Id.* at 227, 721 S.E.2d at 773. Our supreme court concluded "this case represent[ed] an 'instance[] where this statutory ground would not support termination of parental rights.'" *Id.* at 226, 721 S.E.2d at 773 (quoting *Jackson*, 368 S.C. at 102 n.8, 627 S.E.2d at 773 n.8).

Conversely, in the instant case, DSS delayed bringing the TPR action—not the initial merits removal hearing.[2] Rather than erecting road blocks making it impossible for Father to regain legal custody of Children, DSS's delay in filing the TPR action gave Father the benefit of additional time to remedy the situation

---

[2] Child 7 and Child 8 were removed from the home on November 22, 2013. The merits order—relieving DSS from providing services to Father—was issued March 19, 2014.

before his parental rights were terminated.  This delay allowed Father the benefit of another permanency planning hearing on January 28, 2015, where the family court continued to believe TPR was in Children's best interest.  Thus, we find the family court did not err in concluding a ground for TPR existed because Child 7 and Child 8 were in foster care for fifteen of the most recent twenty-two months.

Finally, we find TPR is in Children's best interest.  Although this issue was not raised in Father's brief, we address it because it impacts minor children.  *See Joiner ex rel. Rivas v. Rivas*, 342 S.C. 102, 107, 536 S.E.2d 372, 374 (2000) ("[P]rocedural rules are subservient to [this] court's duty to zealously guard the rights of minors."); *Ex parte Roper*, 254 S.C. 558, 563, 176 S.E.2d 175, 177 (1970) ("[W]here the rights and best interests of a minor child are concerned, [this] court may appropriately raise, ex mero motu, issues not raised by the parties.").

In a TPR case, the best interest of the child is the paramount consideration.  *S.C. Dep't of Soc. Servs. v. Smith*, 343 S.C. 129, 133, 538 S.E.2d 285, 287 (Ct. App. 2000).  "The interests of the child shall prevail if the child's interest and the parental rights conflict."  S.C. Code Ann. § 63-7-2620 (2010).  "The purpose of [the TPR statute] is to establish procedures for the reasonable and compassionate [TPR] where children are abused, neglected, or abandoned in order to protect the health and welfare of these children and make them eligible for adoption . . . ."  S.C. Code Ann. § 63-7-2510 (2010).  "Appellate courts must consider the child's perspective, and not the parent's, as the primary concern when determining whether TPR is appropriate."  *S.C. Dep't of Soc. Servs. v. Sarah W.*, 402 S.C. 324, 343, 741 S.E.2d 739, 749-50 (2013).

Viewed from Children's perspective, we find TPR is in Children's best interest.  Father failed to provide financial and material support for Children, despite his employment over the past several years.  Evidence also shows it is unlikely Father will be able to provide a safe environment for Children because of his ongoing relationship with Mother.  *See* § 63-7-2620 ("The interests of the child shall prevail if the child's interest and the parental rights conflict.").  At the TPR hearing, Mother's parental rights were terminated to nine different children—including Children.  DSS has had six prior founded cases regarding Mother and her children have been in foster care on three separate occasions.  At the time of the TPR hearing, Mother was pregnant with another child, and Father stated he was the child's father.  Further, Father admitted Mother currently lived with him and admitted Mother's adult son—who was charged with criminal sexual conduct with a minor and on the Central Registry of Child Abuse and Neglect—stayed some weekends with him.  The Guardian ad Litem (GAL) for Child 9 reported she was

"very uncomfortable" with Mother's adult son being around Children. Thus, we conclude Father's home is not suitable for Children.

Importantly, TPR will allow Children to be eligible for adoption by a family that will provide a suitable home environment. *See S.C. Dep't of Soc. Servs. v. Cochran*, 364 S.C. 621, 626, 614 S.E.2d 642, 645 (2005) ("Parents have a fundamental interest in the care, custody, and management of their children. . . . However, a child has a fundamental interest in terminating parental rights if the parent-child relationship inhibits establishing secure, stable, and continuous relationships found in a home with proper parental care."). At the time of Children's removal, Child 7 was two years old, Child 8 was one year old, and Child 9 was two days old. DSS testified Children were in a foster home that wanted to adopt them, and Child 9's GAL reported the foster family provided Children a safe, healthy, and nurturing environment. Both GALs recommended TPR and adoption. Adoption will provide Children stability. *See S.C. Dep't of Soc. Servs. v. Cameron N.F.L.*, 403 S.C. 323, 329, 742 S.E.2d 697, 700 (Ct. App. 2013) ("[T]his court has considered future stability when determining whether TPR is in a child's best interest."). Therefore, in the interest of permanency, stability, and safety, we find TPR is in Children's best interest.

Based on the foregoing, the decision of the family court is

**AFFIRMED.**[3]

**LOCKEMY, C.J., and HUFF and THOMAS, JJ., concur.**

---

[3] We decide this case without oral argument pursuant to Rule 215, SCACR.