**THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

South Carolina Department of Social Services,
Respondent,

v.

Connie Marie Moore and John Elton Lacey, Defendants,

Of whom Connie Marie Moore is the Appellant.

In the interest of a minor under the age of eighteen.

Appellate Case No. 2019-001472

———————————

Appeal From Chesterfield County
Cely Anne Brigman, Family Court Judge

———————————

Unpublished Opinion No. 2020-UP-110
Submitted April 3, 2020 – Filed April 22, 2020

———————————

**AFFIRMED**

———————————

Harry A. Hancock, of Columbia, for Appellant.

Sarah Crawford Campbell, of Cockrell & Campbell, P.C., of Chesterfield, as Guardian ad Litem for Appellant.

Delton W. Powers, Jr., of Powers Law Firm, PC, of Bennettsville, for Respondent.

C. Heath Ruffner, of McLeod & Ruffner, of Cheraw, for the Guardian ad Litem for the minor child.

––––––––––

**PER CURIAM:** Connie Marie Moore (Mother) appeals an order terminating her parental rights (TPR) to her minor child (Child). On appeal, Mother argues clear and convincing evidence does not show Child remained in foster care for fifteen of the most recent twenty-two months due to Mother's actions. We affirm.

On appeal from the family court, this court reviews factual and legal issues de novo. *Simmons v. Simmons*, 392 S.C. 412, 414, 709 S.E.2d 666, 667 (2011); *Lewis v. Lewis*, 392 S.C. 381, 386, 709 S.E.2d 650, 652 (2011). Although this court reviews the family court's findings de novo, we are not required to ignore the fact that the family court, which saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony. *Lewis*, 392 S.C. at 385, 709 S.E.2d at 651-52.

The family court may order TPR upon finding a statutory ground for TPR is met and TPR is in the child's best interest. S.C. Code Ann. § 63-7-2570 (Supp. 2019). The grounds for TPR must be proved by clear and convincing evidence. *S.C. Dep't of Soc. Servs. v. Parker*, 336 S.C. 248, 254, 519 S.E.2d 351, 354 (Ct. App. 1999).

Here, the undisputed evidence showed Child remained in foster care for more than fifteen of the most recent twenty-two months. *See* S.C. Code Ann. § 63-7-2570(8) (providing a statutory ground for TPR exists when "[t]he child has been in foster care under the responsibility of the State for fifteen of the most recent twenty-two months"). On appeal, Mother contends the family court erred in applying this ground based on its finding that she failed to take "proactive measures" to counter procedural delays by the Department of Social Services (DSS). Mother also contends parents do not have a duty to take proactive measures in order to argue this ground should not apply.

In *Charleston County Department of Social Services v. Marccuci*, 396 S.C. 218, 229, 721 S.E.2d 768, 774 (2011), our supreme court reversed the application of this statutory ground against the father. In doing so, the court described the "procedural morass" of that case:

The action began in a timely manner on January 28, 2008, with the probable cause hearing. The merits hearing was scheduled for February 28, but the court continued it upon the motion of [the father's] guardian *ad litem* once it was clear the case was contested. At some point, the merits hearing was set for June 4. However, a pre-trial hearing scheduled for May 13 was continued until June 18 because no judge was available; the June 4 merits hearing accordingly was rescheduled for October 1. For some reason not apparent in the record, this hearing was continued again. Frustrated at the lack of progress in this case, the [child's g]randparents moved for an expedited placement hearing, but that too was continued on December 8 for unknown reasons. On January 22, 2009, the hearing on the expedited motion was again continued. The merits hearing was then scheduled for April 30, nearly fifteen months after the minor child was removed by DSS, to no avail: it was continued for lack of notice. The hearing was again continued on May 4 for the same reason. It was not until July 10—far beyond the thirty-day limit provided for by statute—that the merits hearing was held, and the final order was not issued until August 3, over one-and-a-half years after the child was placed in protective custody. The final order authorized DSS to forego efforts at reunification and pursue TPR. By the time the removal action was complete, the child had lived in seven different foster homes and no less than seven different family court judges had been involved.

*Id.* at 223-24, 721 S.E.2d at 771-72 (footnotes omitted). In reversing, our supreme court held, "Where there is 'substantial evidence that much of the delay . . . is attributable to the acts of others,' a parent's rights should not be terminated based solely on the fact that the child has spent greater than fifteen months in foster care." *Id.* at 227, 721 S.E.2d at 773 (alteration in original) (quoting *S.C. Dep't of Soc. Servs. v. Cochran*, 356 S.C. 413, 420, 589 S.E.2d 753, 756 (2003) (Pleicones, J., concurring)). Our supreme court reiterated this holding in *South Carolina Department of Social Services v. Sarah W.*, 402 S.C. 324, 336, 741 S.E.2d 739, 746 (2013), where it held:

> [S]ection 63-7-2570(8) may not be used to sever parental rights based solely on the fact that the child has spent fifteen of the past twenty-two months in foster care. The family court must find that severance is in the best interests of the child, and that the delay in reunification of the family unit is attributable not to mistakes by the government, but to the parent's inability to provide an environment where the child will be nourished and protected.

Based on our de novo review of the record, this case does not embody the "procedural morass" of *Marccuci*. Child was removed July 29, 2016, and the merits removal hearing was timely scheduled for August 11, 2016. *See* S.C. Code Ann. § 63-7-710(E) (2010) ("The hearing on the merits to determine whether removal of custody is needed . . . must be held within thirty-five days of the date of receipt of the removal petition."). The family court found exceptional circumstances existed to continue that hearing, and it was held on September 8, 2016, in compliance with the statutory timeframe. *See id.* ("A party may request a continuance that would result in the hearing being held more than thirty-five days after the petition was filed, and the court may grant the request for continuance only if exceptional circumstances exist. If a continuance is granted, the hearing on the merits must be completed within sixty-five days following receipt of the removal petition."). Thereafter, the first permanency planning hearing was timely held on May 11, 2017—less than a year after Child entered foster care. *See* S.C. Code Ann. § 63-7-1700(A) (Supp. 2019) ("The permanency planning hearing must be held no later than one year after the date the child was first placed in foster care."). Admittedly, the next permanency hearing, which was not held until May 3, 2018, was not timely. *See* S.C. Code Ann. § 63-7-1700(I)(2) (Supp. 2019) ("If the court ordered extended foster care for the purpose of reunification with the parent, the . . . next permanency planning hearing . . . must be held on or before the date specified in the plan for expected completion of the plan; in no case may the hearing be held any later than six months from the date of the last court order."). However, that single delay does not suggest this ground should not apply, especially when that hearing was timely scheduled for November 2, 2017, but continued at Mother's request, and continued again on January 11, 2018, by agreement between the parties. At each permanency planning hearing the family court reviewed this case and determined Mother's home was not safe for reunification.

Further, the testimony of the DSS caseworker at the TPR hearing showed Mother's home was not safe for reunification. Although Mother completed several components of her placement plan, she continued to live with John Elton Lacey (Father)—who tested positive for cocaine several times throughout this case—until September 28, 2018, when she moved out after an incident of domestic violence. The DSS caseworker testified about Father's anger management issues and her concerns with Mother's safety while living with him. Thus, Mother's home was not safe for Child while she lived with Father. Although there was evidence Mother obtained an apartment separate from Father for a short period of time, the DSS caseworker testified Mother never allowed her to visit that apartment and assess its safety. Thus, DSS could not begin transitional visits or consider reunification with Mother during that time. On June 25, 2019, Mother informed DSS she was living with Father again, making her home unequivocally unsafe for Child. Based on the foregoing, DSS presented clear and convincing evidence that Child remained in foster care due to Mother's inability to provide a safe and suitable home for Child rather than dilatory actions by DSS, and the family court properly applied this ground.

Finally, viewed from Child's perspective, TPR is in her best interest.[1] *See S.C. Dep't of Soc. Servs. v. Smith*, 343 S.C. 129, 133, 538 S.E.2d 285, 287 (Ct. App. 2000) ("In a [TPR] case, the best interests of the children are the paramount consideration."); *Sarah W.*, 402 S.C. at 343, 741 S.E.2d at 749-50 ("Appellate courts must consider the child's perspective, and not the parent's, as the primary concern when determining whether TPR is appropriate."). At the time of the TPR hearing, Mother lived with Father, who tested positive for cocaine several times throughout this case. The DSS caseworker expressed concern about Mother's safety in Father's home. Because Mother continued to live with Father, she did not have a suitable home for Child, and based on the length of time Child remained in foster care, it does not appear Mother will take the necessary steps to provide a suitable home for Child in the foreseeable future. The evidence showed Child was doing well in her foster home and her foster parents wished to adopt her. Due to Child's need for permanency and stability in a safe and suitable home, TPR is in her best interest.

---

[1] Although Mother does not raise this issue on appeal, we address it because it concerns the rights of a minor child. *See Ex parte Roper*, 254 S.C. 558, 563, 176 S.E.2d 175, 177 (1970) ("[W]here the rights and best interests of a minor child are concerned, the court may appropriately raise, ex mero motu, issues not raised by the parties.").

**AFFIRMED.**[2]

**HUFF, THOMAS, and MCDONALD, JJ., concur.**

---

[2] We decide this case without oral argument pursuant to Rule 215, SCACR.