**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Laura Beth Wilkins and Robert Wilkins, Respondents,

v.

Victoria Maureen McVicker Knox and Michael Knox, Defendants,

Of whom Victoria Maureen McVicker Knox is the Appellant.

In the interest of minors under the age of eighteen.

Appellate Case No. 2019-001219

———————

Appeal From Lexington County
Robert E. Newton, Family Court Judge

———————

Unpublished Opinion No. 2020-UP-297
Submitted October 22, 2020 – Filed November 2, 2020

———————

**AFFIRMED**

———————

Nancy Carol Fennell, of Irmo, for Appellant.

John D. Elliot and Timothy D. Harbeson, both of Columbia, for Respondents.

Jacqueline K. Draper, of Draper Law Firm, LLC, of Lexington, as Guardian ad Litem.

---

**PER CURIAM:** Victoria Maureen McVicker Knox (Mother) appeals an order terminating her parental rights to Child 1, Child 2, and Child 3 (collectively, Children), and granting their adoption by Laura Beth Wilkins and Robert Wilkins. On appeal, Mother argues the family court erred in finding (1) she willfully failed to support Children and (2) termination of parental rights (TPR) was in Children's best interest. We affirm.[1]

On appeal from the family court, this court reviews factual and legal issues de novo. *Simmons v. Simmons*, 392 S.C. 412, 414, 709 S.E.2d 666, 667 (2011); *Lewis v. Lewis*, 392 S.C. 381, 386, 709 S.E.2d 650, 652 (2011). Although this court reviews the family court's findings de novo, we are not required to ignore the fact that the family court, which saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony. *Lewis*, 392 S.C. at 385, 709 S.E.2d at 651-52.

The family court may order TPR upon finding a statutory ground for TPR is met and TPR is in the child's best interest. S.C. Code Ann. § 63-7-2570 (Supp. 2019). The grounds for TPR must be proved by clear and convincing evidence. *S.C. Dep't of Soc. Servs. v. Parker*, 336 S.C. 248, 254, 519 S.E.2d 351, 354 (Ct. App. 1999). A statutory ground for TPR exists when

> [t]he child has lived outside the home of either parent for a period of six months, and during that time the parent has wilfully failed to support the child. Failure to support means that the parent has failed to make a material contribution to the child's care. A material contribution consists of either financial contributions according to the parent's means or contributions of food, clothing, shelter, or other necessities for the care of the child according to the parent's means or contributions of food, clothing, shelter, or other necessities for the care of the child according to the parents' means. The court may consider

---

[1] Counsel for Mother initially filed an affidavit pursuant to *Ex Parte Cauthen*, 291 S.C. 465, 354 S.E.2d 381 (1987), asserting she reviewed the hearing transcript and believed the appeal lacked merit. On May 13, 2020, this court ordered briefing.

all relevant circumstances in determining whether or not
the parent has willfully failed to support the child,
including requests for support by the custodian and the
ability of the parent to provide support.

S.C. Code Ann. § 63-7-2570(4) (Supp. 2019). "Whether a parent's failure to visit or support a child is 'willful' within the meaning of the statute is a question of intent to be determined in each case from all the facts and circumstances." *S.C. Dep't of Soc. Servs. v. Broome*, 307 S.C. 48, 52, 413 S.E.2d 835, 838 (1992). "[T]he element of willfulness must be established by clear and convincing evidence." *Id*. "Conduct of the parent which evinces a settled purpose to forego parental duties may fairly be characterized as 'willful' because it manifests a conscious indifference to the rights of the child to receive support and consortium from the parent." *Id*. at 53, 413 S.E.2d at 839.

We find clear and convincing evidence showed Mother willfully failed to support Children. Children were removed from Mother on March 24, 2016, and the family court ordered her to pay support on August 31, 2016. At the TPR hearing, Mother acknowledged she did not pay any support until November 2017—a period of more than nineteen months after Children were removed. Although she stated she did not have transportation or a job during that time, her steady employment after October 2017 showed she was capable of obtaining employment, and her failure to do so sooner so she could provide support for Children constitutes willful failure to support. Based on the foregoing, clear and convincing evidence showed Mother willfully failed to support Children. *See* S.C. Code Ann. § 63-7-2620 (2010) ("This article must be liberally construed in order to ensure prompt judicial procedures for freeing minor children from the custody and control of their parents by terminating the parent-child relationship.").

We disagree with Mother's contention that the family court erred in failing to consider the time period outside of a single six-month time period. *See S.C. Dep't of Soc. Servs. v. Headden*, 354 S.C. 602, 612-13, 582 S.E.2d 419, 425 (2003) (providing "the family court is able to look beyond the months immediately preceding the TPR action at the [parent's] overall conduct" when determining whether a parent has willfully failed to support a child); *id.* (finding the mother willfully failed to support her child "[a]lthough [she] had caught up with her support payments by the time of the TPR hearing"). When analyzing whether a parent willfully failed to pay support, the court can consider *all* the evidence—not just the six months preceding the TPR hearing. We find the facts of *Broom v. Jennifer J.*, 403 S.C. 96, 742 S.E.2d 382 (2013), which analyzed the statutory

ground of willful failure to visit, instructive.  There, the mother "did not visit [her child] for eight months from December 21, 2007, to August 30, 2008."  *Id.* at 101, 742 S.E.2d at 384.  Thereafter, she failed to visit in "September[] and November 2008; January, June, August, and October 2009; February, April, and July 2010; and September 2011."  *Id.* at 101 n.5, 742 S.E.2d at 384 n.5.  Thus, although the mother exercised visitation in all but one month during the year preceding the TPR hearing, our supreme court considered her visitation during the entire period her child was in foster care and concluded her "willful failure to visit . . . for eight months followed by infrequent and sporadic visitation over the following years [was] sufficient to satisfy this statutory ground."  *Id.* at 114, 742 S.E.2d at 391.  Here, Mother failed to provide *any* support during the first nineteen months Children were in foster care despite being ordered to do so in August 2016.  Thereafter, although she paid somewhat regularly, she missed several payments in early 2019 and still had an arrears in the months leading up to the TPR hearing.  We find Mother's failure to pay *any* support for nineteen months followed by irregular payments is sufficient to support this ground.

Likewise, we disagree with Mother's contention that her payments after November 2017 constituted "curative conduct that demonstrated her intention to fulfill her parental duty to financially support her children."  *See S.C. Dep't of Soc. Servs. v. Cummings*, 345 S.C. 288, 296, 547 S.E.2d 506, 510 (Ct. App. 2001) ("A parent's earlier failure to support may be cured by the parent's subsequent repentant conduct."); *id.* ("Once conduct constituting a failure to support is shown to have existed, the court must then determine whether the parent's subsequent conduct was of a sufficient nature to be curative.").  The guardian ad litem (the GAL), who met with Mother on February 28, 2019, reported Mother had an arrears of $800.  At the TPR hearing, Mother acknowledged missing some payments in early 2019 but claimed it was due to a new child support payment system that began at the beginning of 2019.  Thus, although Mother began making payments after November 2017, she did not make all of those payments and still had an arrears in the months preceding the TPR hearing.

Further, we find Mother's payments were judicially motivated.  *See id.* at 296, 547 S.E.2d at 510-11 ("A parent's curative conduct after the initiation of TPR proceedings may be considered by the court on the issue of intent; however, it must be considered in light of the timeliness in which it occurred.  Rarely does judicially motivated repentance, standing alone, warrant a finding of curative conduct.").  Mother made a single payment of child support prior to the filing of this TPR action.  Thereafter, although she paid somewhat regularly, the TPR action was pending.  We likewise find Mother's $700 payment the night before the TPR

hearing was judicially motivated.  *See id*. at 296, 547 S.E.2d at 510 (finding the mother willfully failed to support her children notwithstanding her payment on the day of the TPR hearing of $457 toward the $490 arrears).  Based on the foregoing, we find Mother's payments after November 2017 were insufficient to cure her prior failure to pay support.[2]

We also disagree with Mother's assertion that these facts are similar to those in *Charleston County Department of Social Services v. Marccuci*, 396 S.C. 218, 721 S.E.2d 768 (2011).  In *Marccuci*, our supreme court determined clear and convincing evidence did not support the family court's finding that the father willfully failed to support his minor child when the father testified "he had no income while [he was] incarcerated, [he] had no job for some time when released, and that he tried to support the child once he did have gainful employment but was unaware of the location of the child or even how to pay any support."  *Id*. at 226, 721 S.E.2d at 773.  The court further found, "Once a court order was in place for [the father] to pay support for the child, he immediately paid on time and was never in arrears."  *Id*.  Our supreme court concluded "[t]his conduct certainly [did] not evince a settled purpose to forego his obligation to support his child."  *Id*.  Here, unlike the father in *Marccuci* who was never in arrearage once he was ordered to pay child support, Mother acknowledged to the GAL she had an arrears of $800.  Thus, the facts here are distinguishable from *Marccuci*.  Based on the foregoing, we find clear and convincing evidence showed Mother willfully failed to support Children.

Finally, viewed from Children's perspective, we find TPR is in their best interest.  *See S.C. Dep't of Soc. Servs. v. Smith*, 343 S.C. 129, 133, 538 S.E.2d 285, 287 (Ct. App. 2000) ("In a [TPR] case, the best interests of the children are the paramount consideration."); S.C. Code Ann. § 63-7-2620 (2010) ("The interests of the child shall prevail if the child's interest and the parental rights conflict."); *S.C. Dep't of*

---

[2] In their brief, the Wilkins assert the clerk of court issued a rule to show cause against Mother for failing to pay support.  Although this would be strong evidence Mother's payment of support after November 2017 was judicially motivated, we did not find sufficient evidence in the record to support this.  In their brief, the Wilkins support this contention with the following testimony by Laura in response to questioning about when Mother requested visitation: "She—the Saturday before we went to court—I can't remember the date; my dates are messed up—but we had a court hearing for, I believe it was for child support if I'm not mistaken. . . ."  This passing reference to a court hearing does not rise to the level of clear and convincing evidence that is required for a TPR proceeding.

*Soc. Servs. v. Sarah W.*, 402 S.C. 324, 343, 741 S.E.2d 739, 749-50 (2013) ("Appellate courts must consider the child's perspective, and not the parent's, as the primary concern when determining whether TPR is appropriate."). Mother has had several cases with the Department of Social Services (DSS) that resulted in Children being placed in other homes either by court order or pursuant to safety plans. Specifically, Children were placed with their grandfather in September 2014; placed with the Wilkins in October 2014 after their grandfather violated the safety plan; and returned to Mother's home in January 2015. Less than four months later, in April 2015, Children were again placed with the Wilkins; they returned to Mother in June 2015. Less than five months later, in November 2015, Children were voluntarily placed with the Wilkins while their home was cleaned and repaired; the record does not indicate when they returned to Mother's home. In March 2016, Children were placed in emergency protective custody; Child 1 was eleven, Child 2 was six, and Child 3 was five. Children were placed with the Wilkins in August 2016 and have remained with them since then. Although Mother made progress in treatment and maintained a stable home and job prior to this TPR hearing, she admitted her home was not big enough for Children.[3] Overall, based on the instability Children experienced in Mother's care, we find it in their best interest to remain in the stable environment they have lived in for the last four years.

Further, the GAL stated Children did not want to visit Mother, they "had a really, really hectic early life," and their experiences profoundly affected them. She explained Children told her about "a lot of things that went on in [Mother's] house that caused them to be afraid or just uncomfortable" and averred "it would require a great deal of psychological counseling" if the court allowed Mother to visit. The GAL testified each child told her about "[d]irt, filth, [and] violence in the house," and "[a]t least one of the children related seeing needles around the house." We find this is compelling testimony that suggests the Wilkins were looking out for Children's best interest when they prohibited visitation. Further, the GAL stated Children were happy with the Wilkins and hoped to be adopted by them. Based on the foregoing, we find TPR and adoption by the Wilkins is in Children's best interest.

**AFFIRMED.**[4]

---

[3] Mother's progress came after she gave birth to another child and was ordered to complete a new placement plan.

[4] We decide this case without oral argument pursuant to Rule 215, SCACR.

**KONDUROS, MCDONALD, and HEWITT, JJ., concur.**